COMMONWEALTH *vs.* JAMES F. MOORE.

Bristol. Oct. 25. — Nov. 22, 1887. C. ALLEN & KNOWLTON, JJ., absent.

At the trial of a complaint for keeping and maintaining a tenement used for the illegal sale and illegal keeping of intoxicating liquors, if the defendant has an innholder's license and also a license of the first class for the sale of intoxicating liquors, and the evidence for the government tends to show that the defendant sold intoxicating liquors on the Lord's day to several persons who went into his premises for the purpose of procuring and drinking such liquors, such persons are not "guests," within the meaning of the Pub. Sts. c. 100, § 9, cl. 2; and the defendant is not entitled to have the jury instructed as to the rights of an innholder to sell to his guests.

If a person licensed to sell intoxicating liquors, places or maintains curtains in the windows upon the licensed premises, in such a way as to interfere with a view of the business conducted thereon, or of the interior thereof, it is a violation of his license; and it is immaterial for what purpose he maintains the curtains.

At the trial of a complaint for keeping and maintaining a tenement used for the illegal sale and illegal keeping of intoxicating liquors, the complainant testified that he was employed by a Law and Order League to obtain evidence against liquor sellers, and to prosecute such for illegal sales of intoxicating liquors; that the league furnished him with money to pay expenses; that he asked some sailors to visit the tenement in question with him, and ordered liquors for them, which he paid for out of money furnished by the league. *Held*, that the defendant was not entitled to have the jury instructed that the witness was not entitled to be believed, or that the jury should not convict upon such evidence.

COMPLAINT for keeping and maintaining a common nuisance, to wit, a certain tenement in New Bedford, used for the illegal sale and illegal keeping of intoxicating liquors, on April 1, 1886,

---

and on divers other days and times between that day and May 22, 1886. Trial in the Superior Court, before *Brigham*, C. J., who allowed a bill of exceptions, in substance as follows:

The defendant was a licensed innholder, and also held a license of the first class for the sale of intoxicating liquors during the time charged in the complaint, which license contained the provision of the statute in regard to innholders.

The complainant, Jules Giquel, testified that he went to the premises described in the license, on Sunday, May 9, 1886, about noon, with one Partridge and three sailors, whom he and Partridge found in one of the public streets of New Bedford, and invited to go with them where liquor could be sold; that, after visiting one or more places, they came to the defendant's place; that the curtains to the front windows on the east side of the defendant's saloon were drawn so as to cover the entire windows, and the defendant stood inside the saloon, near the window just north of the door leading into the saloon; that as he, Partridge, and the three sailors stopped in front of the defendant's place, the defendant pulled the curtains aside, and moved his hand towards the gate leading to a rear door on the south side of the building, which they interpreted to mean to go into the gate into the yard and round the house; that they did so, and went into the defendant's place at the back door, and found in the saloon or bar-room some twenty-five other persons; that others came in and went out, some through the front door and some through the back door; that while they were in there five persons got whiskey, drank it, and paid for it; that two or three of the sailors who went with him got whiskey or rum, and he paid for it; that the curtains to the windows were drawn so as to cover the entire windows at the time of said sales.

The bar-room in which the sales were testified to have taken place was the front room on the first floor next to the street; and the windows above referred to were windows looking out of said room.

The complainant further testified, that he was employed with Partridge by the Law and Order League of New Bedford to obtain evidence against liquor sellers in New Bedford, and to prosecute such for illegal sales of intoxicating liquor; that they were furnished by said league with money to pay their expenses,

and were paid by the day for their labors; that the money they paid out for liquor drunk and food eaten by the sailors was money furnished by said league.

Partridge testified to similar matters and things; and both he and Giquel testified that the windows to the saloon were about six feet from the sidewalk, and that the house was some three or four feet back from the line of the street; and another witness testified that, standing on the sidewalk in front of the house, one could see into the saloon only a few feet, and could see only down to the waist of a person standing near the window.

There was some other testimony as to Sunday, April 25, and May 2, in regard to the use of the saloon on those days. The defendant and his bar-tender were called, and testified, directly contradicting the evidence of Giquel and Partridge.

The defendant asked the judge to give the following instructions to the jury: " 1. An innholder, under a license to sell intoxicating liquor, has a right to sell on any part of the Lord's day, night as well as day, in any part of his inn, to a guest. 2. He has a right to sell to a guest on any part of any day of the week. 3. A guest is one who has resorted to his house for either food or lodging, as lodger, or boarder, or for lunch. 4. One is a guest who goes into such a place for food alone, or for lodging alone, and he would be a guest if only for a lunch or for an hour's rest; and to such a person the innholder may sell intoxicating liquor under his license. 5. If one goes to an inn for food, and gets it, he may be furnished with liquor under a license to an innholder. 6. Upon Sunday a licensed innholder has a right to have screens or curtains on the windows on his premises in the room in which intoxicating liquor is usually sold, and the law does not apply on that day to an innholder. 7. If curtains to a window that were up would not cut off a view of the premises, or the business done within the room to a passer-by, because they were so high one could not see in, or for any other cause, then the license would not be void or the sale illegal. 8. If the curtains were up, but not for the purpose of preventing persons passing by in the street from obtaining a view within the rooms or a view of the business done therein, then it would not make the license void, or the sale for that cause illegal.

9. Persons employed by an association or league to induce the defendant and others to sell liquor for the purposes of prosecuting the defendant and others for violations of their license, are not such persons as are entitled to belief, and a jury should not convict upon the testimony of such hired witnesses."

The judge declined to give the instructions requested, and instructed the jury as follows: " The license of the defendant as an innholder would be violated, if, in the building to which that license applied, he sold intoxicating liquors to persons not guests, who had resorted to that building, either for food or for lodging, between the hours of eleven o'clock at night and six o'clock in the morning, or on the Lord's day, or when the windows of the room in which defendant or his servants thus sold intoxicating liquors were so screened by curtains as to interfere with a view of the business conducted in that room, or with a view of the interior of that room. A person, who for a considerable and substantial period of time violates, in the sale of intoxicating liquors, or in the keeping of intoxicating liquors for sale, the conditions of his license in the building to which that license applies, may be convicted of keeping and maintaining that building, at times when that building is so used in the violation of that license, as a common nuisance."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*E. L. Barney,* for the defendant.

*H. C. Bliss,* Assistant Attorney General, for the Commonwealth.

MORTON, C. J. The instructions given were appropriate and sufficient.

The case made by the government was that the defendant sold intoxicating liquors on the Lord's day to several persons who went into his premises for the purpose of procuring and drinking liquor. Such persons were not guests within the meaning of the statute, and there was no occasion to instruct the jury, as requested by the defendant, as to the rights of an innholder to sell to his guests. *Commonwealth* v. *Hagan,* 140 Mass. 289.

The instructions requested as to curtains were properly refused. If the defendant placed or maintained curtains in his windows in such a way as to interfere with a view of the business

conducted upon the premises, or with a view of the interior of the premises, it was a violation of his license, and it is immaterial for what purpose he maintained the curtains. *Commonwealth* v. *Worcester*, 141 Mass. 58. *Commonwealth* v. *Rourke*, 141 Mass. 321.

The last request of the defendant was properly refused. The court had no right to instruct the jury that the government's witnesses were not entitled to belief. The credibility of the witnesses on either side was a matter entirely for. the jury, and the instruction requested would have been erroneous.

*Exceptions overruled.*